# IN THE UNITED STATES COURT FO APPEALS
# FOR THE EIGHTH CIRCIUT

**DAVID STEBBINS**                                                                            **PLAINTIFF**

**VS**                                **CASE NO. 12-3981**

**LEGAL AID OF ARKANSAS**                                         **DEFENDANTS**

## APPELLANT BRIEF

Comes now, *pro se* Appellant David Stebbins, who hereby submits the following Appellant Brief.

## TABLLE OF CONTENTS

1. TABLE OF CONTENTS     1
2. TABLE OF AUTHORITIES     3
3. JURISDICTIONAL STATEMENT     4
    a) Basis for District Court's Jurisdiction.     4
    b) Basis for Court of Appeals' Jurisdiction.     4
    c) Timeliness of appeal     4
    d) Finality of judgment     4
4. STATEMENT OF ISSUES     5
5. STATEMENT OF THE CASE     5
6. SUMMARY OF ARGUMENT     10
7. ARGUMENT     11
    a) The order denying my First Motion for Partial Summary Judgment should be reversed because The AR Rules of Professional Conduct must bow to federal statutes.     11

  b) The order denying my Second Motion for Partial Summary Judgment should be reversed because the Clerks' Office  12
corrected their mistake.

  c) my Motion to Compel Discovery should have  14
been granted, andDefendant's motion for Protective Order denied.

 8. CONCLUSION  16

# TABLE OF AUTHORITIES

**Constitutional provisions**   **Page(s)**

Article VI, Clause 2   11

**Statutes & Rules**   **Page(s)**

28 USC § 1291   4

28 USC § 1294   4

28 USC § 1391(b)(1)-(2)   4

42 U.S.C. §§ 12131–12165   12

42 U.S.C. § 12203   8, 11

Ark. Code Ann. § 16-118-107   16

Ark. Code Ann. § 19-10-305   14

Fed. R. App. P. 4(a)(1)(A)   4

Fed. R. Civ. P. 11(c)(4)   15

Fed. R. Civ. P. 26(c)(1)(A)   15

**Case law**   **Page(s)**

*Antoine v. Byers & Anderson, Inc.*, 508 US 429 (1993)   13

*Haines v. Kerner*, 404 U.S. 519 (1972)   15

*Tennessee v. Lane*, 541 US 509 (2004)   12

*Walker v. City of Pine Bluff*, 414 F. 3d 989, 993 (8th Cir. 2005)   14

# JURISDICTIONAL STATEMENT

## Basis for District Court's Jurisdiction

The United States District Court for the Western District of Arkansas ("the District Court") had federal question jurisdiction over this action, as it was a dispute regarding violations of the Americans with Disabilities Act of 1990 (as amended by the ADA Amendments Act of 2008) and the Rehabilitation Act of 1973.

Personal jurisdiction and venue were appropriate in the District Court, pursuant to 28 USC § 1391(b)(1)-(2).

## Basis for Court of Appeals' Jurisdiction.

This Court has jurisdiction to hear the appeal of this case, pursuant to 28 USC § 1291. This Court's personal jurisdiction to review decisions of the U.S. District Court for the Western District of Arkansas stems from the statute of 28 USC § 1294.

## Timeliness of Appeal

The District Court entered its judgment on November 6, 2012. Appellant has a 30-day time limit to file a notice of appeal. See Fed. R. App. P. 4(a)(1)(A). Therefore, the deadline to file the Notice of Appeal was December 6, 2012. The Notice of Appeal was filed on December 3, 2012. Therefore, this appeal is timely.

## Finality of Judgment

The District Court entered a final judgment in this case, and even called it a "judgment." When this Notice of Appeal was filed, it came with a caption in all capital letters: "WARNING: CASE CLOSED." Thus, the judgment being appealed is final and appealable.

## STATEMENT OF ISSUES

1. Do laws in the State of Arkansas that *mandate* discrimination and/or retaliation override federal laws that forbid it?

2. Is it retaliation for a lawyer to refuse to represent a client because that client has filed a discrimination lawsuit against the lawyer?

3. Should the District Court have granted the my Motion to Compel Discovery?

4. Should the Court have denied Defendant's Motion for Protective Order?

5. Should the District Court have granted my Motions for Summary Judgment?

## STATEMENT OF THE CASE

1. Plaintiff was a previous client of Defendant, Legal Aid of Arkansas in a dispute with my landlord. Plaintiff has Asperger Syndrome, a disability which Defendant had taken note of immediately at the start of their relationship, and used while representing the Plaintiff (A letter to my landlord even explained that Plaintiff is "a qualified individual with a disability").

2. When Plaintiff submitted a request for additional representation to the Defendant, Defendant refused to represent Plaintiff. When Plaintiff submitted a request for reconsideration of this decision, Defendant responded saying that Plaintiff "will not receive any further legal assistance from Legal Aid of Arkansas on *any matter*."

3. Plaintiff, assuming that his Aspergers had caused him to inadvertently upset the Defendant's lead attorney (one "Micheal Loggains" by name) somehow, sent an email to Loggains, reminding him of my Asperger Syndrome, and that his failure to accommodate the disability constituted disability discrimination. Plaintiff also reminded Loggains that, if this failure were not promptly correction, federal litigation would ensue.

4.     The failure to accommodate was never corrected, and so, Plaintiff filed suit against Legal Aid of Arkansas on July 20, 2011, alleging disability discrimination.  See Document #1.

5.     Plaintiff later received a letter from Defendant's main office in Fayetteville, stating that they will not represent me in any case because it is a conflict of interest in the State of Arkansas for a lawyer to represent any person who is currently suing that entity.  In response to this letter, Plaintiff filed an amended complaint on September 12, 2012, alleging retaliation.  See Document #5.

6.     Plaintiff filed a second amended complaint on September 27, 2012 (Document #8), pursuant to an Order of the District Court entered on September 13, 2012 (Document #6) to clarify his first two.

7.     When Plaintiff had lost an abuse of process lawsuit – worth $6,094,000 – that he was forced to represent himself in because Defendant had already refused to represent me on any matter, Plaintiff, Plaintiff, on October 13, 2012, moved the District Court for leave to make one final amended complaint to include a second act of retaliation. See Document #11.  The Honorable Jimm Larry Hendren (who was presiding over the case at the time) granted this motion later that same day in a text-only order.

8.     On February 23, 2012, Plaintiff moved the Court for default, sanctions, and/or to compel further cooperation, as Defendant had, for absolutely no apparent reason whatsoever, failed to serve Plaintiff with their 26(a) initial disclosures.  See Document #33.

9.     On February 28, 2012, Plaintiff filed a supplement to Document #33.  This was designed, not only to be a supplement to Document #33, but also its own stand-alone motion to compel discovery.  See Document #40.

10. On March 3, 2012, Plaintiff moved the District Court for partial summary judgment, as to the second retaliation claim (the one spoken of in Paragraph #7 of this statement). See Documents #37 – 40. My argument for it was simple: Defendants claimed a "conflict of interests" for why they could not represent me in any case while I was suing them, but the sections which prohibit retaliation in both the Americans with Disabilities Act and the Rehabilitation Act fail provide any exception for lawyers and their conflicts of interests. Everyone – even small children – know that federal law will *always* trump state law whenever the two conflict.

11. On March 23, 2012, Plaintiff notified the Court of his new address. See Document #50. However, the Clerks, apparently, had made a mistake, as the entry speaks of a change made on March 26, 2012.

12. On April 10, 2012, Defendants moved the Court for a protective order and for sanctions, claiming that my discovery requests were "vague," but giving absolutely no details as to how they are "vague" or open for interpretation. See Documents #55 & #56.

13. On April 23, 2012, after the Defendants failed to serve Plaintiff with a response to a request for admissions, filed a second motion for partial summary judgment, this time to dispose of all issues not disposed of in the First Motion for Partial Summary Judgment. See Documents #58 – 60. Defendant, however, claimed that the Clerks of the Court had made a mistake, claiming that my new address was W. Rodge St. (with an O) instead of W. Ridge. St. (with an I). Apparently, this was the "change" that was made on March 26, 2012. Plaintiff replied (see Document #66) showing that, even if the Clerks *made* the mistake, they had promptly corrected it well in time for Defendant to update its records of my address. Therefore, the mistake was

Defendant's.

14. On July 2, 2012, Jim Marchewski denied Document #33, giving absolutely no reason whatsoever for doing so. Dee Document #67. In this same order, he also granted Defendant's motion for protective order, despite he himself not being able to give any explanation whatsoever for how my discovery requests were "vague." He subsequently issued the extreme sanction of barring Plaintiff from serving any more discovery altogether on Defendant.

15. On September 10, 2012, Jim Marchewski set forth a Report and Recommendation, where he set forth, in pertinent part, the following recommendations:

A) The acts of retaliation – although done in direct response to Document #1 in this case and were proximately caused by Document #1 in this case – were not in violation of 42 U.S.C. § 12203, citing the AR Rules of Professional Conduct and pleasantly ignoring my argument about how t he ADA trumps the AR Rules of Professional Conduct as a matter of Federal Supremacy.

B) The Defendant's failure to timely serve me with a response to the Defendant's Request for Admissions was caused by the Clerks' mistake, not the Defendant's failure to update their records after the Clerks corrected their mistake.

16. An objection to the Report and Recommendation was filed by Plaintiff on September 13, 2012 (Document #79), reminding the Court of the doctrine of Federal Supremacy, but also warning the Court that, if they are to find that the mistake was the fault of the Clerks, that would save Defendant, but it would cause liability to be passed down to the United States herself, pointing out how sovereign immunity would not save them.

17. On November 6, 2012, P.K. Holmes – the *actual* judge presiding over the case – adopted Marchewski's Report and Recommendation (Document #88), on the following two main

grounds:

A) The AR Rules of Professional Conduct can trump the ADA, notwithstanding the Federal Supremacy Clause of the Constitution, and notwithstanding everything we have ever been taught about how federal law trumps state law. No legal authority to back up his claim was given; he just brushed aside my claim of Federal Supremacy (though he at least *commented* on it) and sided with Defendant for no other reason than, he felt like it.

B) Although the Clerks made the mistake, I am still responsible for it. Again, no explanation was even attempted. Instead, he tried to point to some harmless mistake I allegedly made – one that was quickly corrected, I might add – where no one was hurt (unlike here, where it caused a plethora of confusion) to point out how much of a hypocrite I was for expecting a professional, thoroughly trained federal employee to be more competent than an untrained *pro se* litigant.

18. P.K. Holmes subsequently caused judgment to be entered in favor of Defendants on all counts. See Document #89. This appeal ensued.

## SUMMARY OF ARGUMENT

1.      The AR Rules of Professional Conduct must bow to federal statutes. This *should* come without saying.  Everyone knows that, as a matter of constitutional principle, federal law must always trump state law whenever the two conflict.  Everyone knows this; even small children know this, and since it is in the Constitution, that means that, absent a Constitutional Amendment, Congress cannot change that, even if they wanted to.  Even if they wanted to give states the power to trump the Americans with Disabilities Act, Title II of that Act clearly shows an intent by Congress to do the exact opposite.

2.      The Clerks may have made a mistake, but they promptly corrected it; it was Defendant whose counsel failed to update the correction in their own records.  Thus, their failure to timely serve their response to my request for admissions is still their fault.

3.      Even if the Defendant should not be punished for the Clerks' mistake, that same precedent should mean that I should not suffer for it, either.  Furthermore, if the Clerks made a mistake, and that mistake proximately caused me to loose the case though no otherwise fault of my own, the United States herself becomes liable; does this Court want that?

4.      Barring me from serving any further discovery on Defendants is too extreme of a sanction.  A lesser, equally effective sanction would have been to explain the vagueness in my discovery requests and order me to correct this mistake in the future. The District Court abused its discretion when it decided to not allow any further discovery.

# ARGUMENT

For the reasons set forth below, the judgment of the District Court should either be reversed, or, at the very least, vacated and the case remanded for further proceedings.

## The order denying my First Motion for Partial Summary Judgment should be reversed because The AR Rules of Professional Conduct must bow to federal statutes.

This issue is reviewable *de novo*.

Legal Aid of Arkansas is barred from retaliating against me for filing a discrimination lawsuit against them. See 42 U.S.C. § 12203.

Legal Aid *claims* that they are required to discriminate against in this manner because the AR Rules of Professional Conduct forbid lawyers from representing clients who are suing them for anything. The AR Rules of Professional Conduct make no distinction between discrimination suits and any other lawsuits.

I cannot believe that I actually have to say this: Everyone – even small children – know that federal law will always trump state law whenever the two conflict. Article VI, Clause 2 of the United States Constitution states the following:

> "This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, **anything in the constitution or laws of any state to the contrary notwithstanding**." (areas of interest bolded for emphasis)

Therefore, Section 503 of the Americans with Disabilities Act (codified as 42 U.S.C. § 12203) is plainly triumphant over anything the State of Arkansas can pass. Since this is in the Constitution, Congress cannot change that, even if they wanted to, without a Constitutional Amendment.

Even if a Constitutional Amendment were not necessary, Congress still did not articulate, within the text of the ADA itself, that the statute does not trump state laws, which would be necessary to trump such a basic doctrine of our country's jurisprudence. Congress plainly does NOT want to give states the power to limit the effectiveness of the Americans with Disabilities Act! Title II of the ADA (codified as 42 U.S.C. §§ 12131–12165) – which is applicable exclusively to state and local governments – clearly shows a complete lack of federal sympathy for State laws which even so much as permit – let alone require – discrimination or retaliation on the basis of disability or a disability discrimination lawsuit.

If Legal Aid fears disbarment as a consequence of taking federal law over state law, they should remember that no on – not even *courts* – are immune from suit for violations of the Americans with Disabilities Act. See *Tennessee v. Lane*, 541 US 509 (2004). If the Arkansas Supreme Court disbarred any of the attorneys who represented me in violation of this Rule of Professional Conduct, they could simply sue the AR Supreme Court in the U.S. District Court for the Eastern District of Arkansas – Little Rock Division to get their law licenses back, and for any lost revenues incurred in the meantime. Simple.

Plainly and simply, the District Court got it plain wrong when they said that the AR Rules of Professional Conduct trump the ADA. Therefore, the District Court's order denying my First Motion for Partial Summary Judgment should be reversed.

**The order denying my Second Motion for Partial Summary Judgment should be reversed because the Clerks' Office corrected their mistake.**

This is reviewable for clear error.

Supposedly, the Clerks entered my new address wrong on March 23, 2012. Whereas my new address was located on W. Ridge St. (with an I), the Clerks supposedly accidentally stated

that my new residence was located on W. Rodge St. (with and O).  Defendants argue that the Clerks' mistake caused them to send their response to my Request for Admissions to the wrong address.  Thus, they argue, they should not be held responsible for their failure.

However, the record clearly shows the Clerks corrected this mistake a mere three days later.  The correction of their mistake was well in advance of the date in which Defendant's Responses to my Requests for Admissions were due.  It was *Defendant* who failed to update *their* records after the mistake was corrected.  Defendant, thus, is just as much at fault for their failure to timely serve the response as if the Clerks never made the mistake in the first place, and Defendant still botched it up.

This is called "intervening cause."  After all, if the Defendant had updated their records to accommodate the correction we would have been in the same position as if the Clerks never made the mistake in the first place and Defendant never made the mistake in the first pace.  The clerks may have put the wheels in motion, but after correcting the mistake and notifying the parties of the correction, the burden then shifted to the parties to update their records to accommodate the correction.  Defendant failed to do so.  Therefore, the mistake that actually *caused* the failure to timely serve the response was Defendant's, not the Clerks'.

Even if this Court were to affirm the District Court's decision that it was the Clerks who are at fault for the confusion, that would only transfer liability to the United States herself.  The Clerks perform purely ministerial tasks.  Thus, they are not protected by absolute immunity.  See *Antoine v. Byers & Anderson, Inc.*, 508 US 429 (1993).

Nor are they protected by qualified immunity.  In the State of Arkansas, the main exception to qualified immunity is whether the state officer committed there act maliciously.  See

Ark. Code Ann. § 19-10-305.  However, under federal law, the "qualification" for qualified immunity is whether the officer's actions violate clearly established law.  Thus, it can be done by accident; as long as the mistake is clearly in violation of the law, they are not immune.  See *Walker v. City of Pine Bluff*, 414 F. 3d 989, 993 (8th Cir. 2005) ("The qualified immunity standard gives ample room for mistaken judgments by protecting **all but the plainly incompetent** or those who knowingly violate the law." areas of interest bolded for emphasis).  Since there is no ambiguity in the clerks' duty to update litigants' addresses whenever said litigants notify the clerks of an address change, qualified immunity will not protect them, even if the Clerks did not do it on purpose.

Does this Court want that?  Does this Court want the United States herself to fork over the money in place of Legal Aid of Arkansas?

### The District Court should have compelled the Defendants to provide full discovery, and should not have barred Plaintiff from pursuing discovery.

These issues are reviewable for abuse of discretion.

The District Court had failed to compel the Defendants to provide full and complete discovery, even when I pointed out clear deficiencies in their discovery. The District Court struck that supplement and reply, pointing out a mistake Plaintiff made[1], and refused to consider them. Plaintiff could have filed a separate motion to compel discovery to correct the mistake. However, simultaneously with denying the motion to compel (and striking the separate one), the District Court also barred Plaintiff from pursuing an further discovery!

My reply (Document #45) should have been construed as a separate motion to compel discovery, as well as showing why the first motion for default should be granted.  my failure to

---

1  Specifically, Plaintiff included the new, deficient discovery in supplements and reply arguments to the previous motion to compel.


separate the two should be excused he was representing himself, and *pro se* litigants are entitled to have their pleadings construed liberally. See *Haines v. Kerner*, 404 U.S. 519 (1972).

Furthermore, barring Plaintiff from serving any further discovery on Defendant is an extremely harsh and drastic sanction, especially when they fail to articulate how the discovery requests were "vague" to the point of unfairly prejudicing Defendant. "A sanction... must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." See Fed. R. Civ. P. 11(c)(4). An admonishment of specifically how my discovery requests were vague and how he can correct those mistakes would have sufficed perfectly as a sanction. If the District Court issued the protective order pursuant to Fed. R. Civ. P. 26(c)(1)(A), then the Court abused its discretion by stating that the discovery requests were vague.

Because Plaintiff was not given the full discovery to which he was entitled, the judgment of the District Court is open to collateral attack. He was unable to amass enough evidence to prove Defendant's explanation for termination of the attorney-client relationship as pretexual[2]. Even if this Court believes that the District Court's denial of the my Motions for Summary Judgment should be reversed, the case should be remanded to the District Court with instructions to afford complete discovery to the Plaintiff.

---

2  Specifically, Defendant asserts that its decision to not represent me "on any matter" was motivated by what they consider to be frivolous legal arguments, not because I had upset them because of my Aspergers.

## CONCLUSION

I get the feeling that the District Court *knew* that their decisions were erroneous, and they simply decided to rule against me anyway, because they are under Legal Aid's thumb. If this is the case, Plaintiff will simply file suit against Legal Aid *again* for corrupting the Courts (both the District Court and this one). If Hon. Holmes and Hon. Marchewski are called as witnesses, they will not be immune from suit, because they would simply be witnesses in that case, not judges.

Furthermore, this lawsuit will take place in the AR state courts, which means that, if Judges Holmes and Marchewski want to lie about why they ruled the way they did, Plaintiff can sue them for perjury, because under AR state law, a victim of a felony has the right to civil recovery for the felony itself, even if no civil equivalent (such as conversion is to theft, or wrongful death is to murder) exists for the crime. See Ark. Code Ann. § 16-118-107. Thus, if Holmes and Marchewski lie in that case, they may have enjoyed immunity for the case that lead to it, but they can be sued, personally, for their acts of perjury. If they ruled this way because they are under Legal Aid's thumb, they will be required to come forth and state point-blank "I ruled this way because I am under Legal Aid's thumb." Otherwise, Plaintiff will not need the Prosecuting Attorney to charge them with perjury; he can do it myself.

The reason I point this out here is because this applies to the judges of this appeal, as well. If no sensible explanation is given for affirming the decision, then this Court's will be subpoenaed as well, complete with the lack of immunity from suit for perjury. Exercise caution when affirming the decision of the District Court.

Wherefore, premises considered, Plaintiff requests that the judgment of the District Court either be reversed, or at the very least, vacated and the case remanded with instructions to afford

Plaintiff full and complete discovery.

It is so requested on this 27th day of January, 2013.

<div style="text-align: right">
 /s/ David Stebbins<br>
David Stebbins<br>
123 W. Ridge St.,<br>
APT D<br>
Harrison, AR 72601<br>
870-204-6516<br>
stebbinsd@yahoo.com
</div>

## CERTIFICATE OF SERVICE

I, *pro se* Appellant David Stebbins, do hereby certify that a true and correct copy of this Appellant Brief was served on Appellee by allowing its counsel to view it on ECF on the 28th day of January, 2012.

<div style="text-align: right">
 /s/ David Stebbins<br>
David Stebbins<br>
123 W. Ridge St.,<br>
APT D<br>
Harrison, AR 72601<br>
870-204-6516<br>
stebbinsd@yahoo.com
</div>